NO. CIV-16-943-HE

---

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

---

**LOREZ R. BRIGGS,      as Next of Kin For the Estate of Lorez R. Chambers,
Deceased and, MICHAEL R. BRIGGS, as Next of Kin For the Estate of Lorez R.
Chambers, Deceased.**

**Plaintiffs,**

**vs.**

**OKLAHOMA COUNTY JAIL, ex rel., OKLAHOMA COUNTY BOARD OF
COUNTY COMMISSIONERS, Oklahoma County, State of Oklahoma.**

**Defendants.**

---

**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
[DOC.#10] WITH BRIEF IN SUPPORT**

---

**LISA ERICKSON ENDRES, OBA # 16647**

**Assistant District Attorney
Oklahoma County District Attorney's Office
320 Robert S. Kerr, Suite 505
Oklahoma City, OK 73102
(405) 713-1600 Phone
(405) 713-1749 Fax**


**Attorney for Defendants**

## TABLE OF CONTENTS

**STATEMENT OF FACTS** ................................................................................. 1

**STANDARD FOR DISMISSAL** .................................................................... 5

**PROPOSITION I:**
Plaintiffs' amended complaint is factually deficient and fails
To state a claim upon which relief may be granted ............................................. 7

    *A.*    *The amended complaint fails to assert a viable federal*
           *Municipal constitutional claim against the Defendant, BOCC* ................ 9

    *B.*    *The amended complaint fails to support a claim for*
           *"excessive" force against the Defendant, BOCC* ................................... 11

**PROPOSITION II:**
Detention officers were servants assisting Oklahoma City
Police during the use of force; thus the county is improper
Party for a Respondeat Superior claim under Bosh ............................................ 17

    *A.*    *Chambers at all times was seized only by Oklahoma City*
           *police* ................................................................................................ 18

    *B.*    *By statute, Detention Officers were acting as servants*
           *Of Oklahoma City Police when restrain Chambers*
           *In the booking area* ........................................................................... 22

**PROPOSITION III:**
Plaintiffs fail to state a claim for relief against the
Oklahoma County Jail ........................................................................................ 25

**PROPOSITION IV:**
Plaintiff's state law claim should be dismissed due to the
Lack of supplemental jurisdiction ...................................................................... 26

**PROPOSITION V:**
Plaintiff's supplemental state law claim must be dismissed
Pursuant to the notice requirements of the GTCA .............................................. 27

**CONCLUSION**..........................................................................................................30

**CERTIFICATE OF SERVICE** ...............................................................................32

## <u>TABLE OF AUTHORITIES</u>

### Case Law

*Anderson v. Suiters*
  499 F.3d 1228 (10th Cir. 2007) ............................................................... .6

*Ashcroft v. Iqbal*
  556 U.S. 662, 120 S.Ct. 1937 (2009) ............................................... 6, 9

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ........................................................ 6, 9, 10, 15, 17

*Berneike v. CitiMortgage, Inc.,*
  708 F.3d 1141 (10th Cir. 2013) ............................................... 6, 11, 22

*Bosh v. Cherokee County Governmental Building Authority*
  2013 OK 9, 305 P.3d 994 ..................................................... 8, 11, 12, 17

*Bryson v. City of Edmond*
  905 F.2d 1386 (10th Cir. 1990). ............................................................ .6

*Bryson v. Oklahoma Cty. Ex rel. Oklahoma Cty. Det. Ctr.,*
  2011 Okla. Civ. App. 98. ................................................................... .17

*Carlsbad Tech., Inc. v. HIF Bio. Inc.,*
  556 U.S. 635 (2009) ........................................................................ .26

*Chambers v. City of Ada,*
  894 P.2d 1068 (Okla. 1995) .............................................................. .28

*Cruse v. Bd. Of Cnty. Comm'rs,*
   910 P.2d 998 (Okla. 1995) ........................................................ .29, 30

*Dahl v. State Dept. of Public Safety,*
  2002 Okla. Civ. App. 15 .................................................................. .24

*Dean v. Barber,*
  951 F.2d 1210 (11th Cir. 1992) ....................................................... .25

*DeGraff v. State,*
  2 Okla. Cr. 519 (1909) ............................................................. ….18

*Dubbs v. Head Start, Inc.*
336 F.3d 1194 (10th Cir. 2003) ........................................................................ 5

*Estate of Booker v. Gomez,*
745 F.3d 405 (10th Cir. 2014) ........................................................................ 8

*Flow v. Thomas,*
CIV-09-1262-F, 2010 WL 3522339 (W.D. Okla. July 30, 2010) .................... 26

*Frazier v. Miller,*
2015 WL 3466831 (Dist. Colo., May 29, 2015) ................................................ 7

*Gates v. Unified School District No. 449 of Leavenworth Cnty.,*
996 F.2d 1035 (10th Cir.) ................................................................................ 10

*Geary v. State,*
1985 OK Cr. 141, 709 P.2d 690 ...................................................................... 24

*Gee v. Pancheco,*
627 F.3d 1178 (10th Cir. 2010) ........................................................................ 7

*Girdner v. Bd. Of Commr's of Cherokee Cnty.,*
227 P.3d 1111 (Okla. Ct. App. 2009) .............................................................. 30

*Gomez v. State,*
2007 OK CR 33, 168 P.3d 1139 ...................................................................... 12

*Graham v. Conner,*
490 U.S. 386 (1989) .......................................................................... 12, 13, 14

*Henson v. Bank of Am.,*
935 F.Supp.2d 1128 (Dist. Colo. 2013) ............................................................ 7

*Hillcrest Medical Center v. State,*
675 P.2d 432 (Okla. 1983) .............................................................................. 20

*Holt v. United States*
46 F.3d 1000, (10th Cir. 1995) .................................................................... 7, 30

*Hospital Founders Association v. Oklahoma Dept. of Public Safety,*
892 P.2d 671 (Okla. Ct. App. 1995) ................................................................ 20

*Hudson v. McMillian*,
    503 U.S. 1 (1992).............................................................................................14

*Illinois v. Lafayette*,
    462 U.S. 640 (1983).........................................................................................22

*Jordan v. Cates*,
    1997 OK 9, 935 P.2d 289.................................................................................17

*Kingsley v. Hendrickson*,
    135 S. Ct. 2466 (2015).............................................................................13, 14

*Long v. State*,
    1985 OK CR 119, 706 P.2d 915 ................................................................12, 18

*Maestas v. Lujan*
    351 F.3d 1001 (10th Cir. 1995) ...................................................................6, 28

*Mansell v. City of Lawton*,
    901 P.2d 826 (Okla. 1995) ............................................................................30

*Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*
    363 F.3d 1072 (10th Cir. 2004) ..................................................................6, 28

*Monell v. New York City Dep't of Soc. Serv.*
    437 U.S. 658 (1978) ................................................................................10, 11

*Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n*,
    891 F.2d 1473 (10th Cir. 1989) ........................................................................8

*N.H. v. Presbyterian Church (U.S.A)*,
    1999 OK 88, 998 P.2d 592 .............................................................................17

*Osborn v. Haley*,
    549 U.S. 225, 127 S.Ct. 881 ..........................................................................26

*Owens v. Scott Cnty. Jail*,
    328 F.3d 1026 (8th Cir. 2003) ........................................................................25

*Pembaur v. City of Cincinnati*,
    475 U.S. 469 (1986) .......................................................................................10

*Perry v. City of Norman,*
    2014 OK 119, 341 P.3d 689 ............................................................................ 8

*Phillips v. County of Allegheny,*
    515 F.3d 224 (3rd. Cir. 2008) ...................................................................... 14

*Plumhoff v. Rickard,*
    134 S. Ct. 2012 (2014) ...........................................................................13, 14

*Port City Props. v. Union Pac. R.R. Co.*
    518 F.3d 1186 (10th Cir. 2008). ...............................................................6, 28

*Randle v. City of Aurora,*
    69 F.3d 441 (10th Cir. 1995) .................................................................... 10

*Ridge at Red Hawk, L.L.C. v. Schneider*
    493 F.3d 1174 (10th Cir. 2007). ................................................................. 6

*Robbins v. Oklahoma ex rel. Dep't of Human Servs.,*
    519 F.3d 1242 (10th Cir. 2008). ............................................................7, 14,

*Sevier v. City of Lawrence,*
    60 F.3d 695 (10th Cir. 1995) .................................................................... 16

*Shanbour v. Hollingsworth,*
    918 P.2d 73 (Okla. 1996)……………………………………………………30

*Simington v. Parker,*
    250 P.3d 351 (Okla. Ct. App. 2011) ................................................... 30

*SK Finance SA v. La Planta Cnty.,*
    126 F.3d 1272 (10th Cir. 1997) ...................................................... 30

*Smith v. State,*
    1982 OK CR 89, 656 P.2d 277 ...................................................... 24

*State v. Dixon,*
    912 P.2d 842 (Okla. 1996) .......................................................... 28

*State v. McNeal,*
    2000 OK CR 13, 6 P.3d 1055 ...................................................... 18

*State ex rel. Dep't of Human Servs. V. Bd. Of Cty. Comm'rs of McClain Cty.,*
    1992 OK 29, 829 P.2d 961 ................................................................. 20

*Stout v. Whetsel,*
    No. CIV-10-1327-HE, 2011 WL 2160788 (W.D. Okla. March 10, 2011) ......... 26

*Terry v. Ohio,*
    392 U.S. 1 (1968) ................................................................................ 19

*Texaco, Inc. v. Layton,*
    1964 OK 51, 395 P.2d 393 ................................................................. 23

*United States v. Botefuhr,*
    309 F.3d 1263 (10th Cir. 2002) ........................................................ 27

*United States v. Mendenhall,*
    446 U.S. 544 (1980) ........................................................................... 19

*United States v. Sharpe,*
    470 U.S. 675 (1985) ........................................................................... 12

*U.S. v. Hudson,*
    210 F.3d 1184 (10th Cir. 2000) ........................................................ 19

*Villalpando ex rel. Villalpando v. Denver Health & Hosp. Auth.,*
    65 F. App'x 683 (10th Cir. 2003) ..................................................... 27

*Washington v. Barry,*
    2002 OK 45, 55 P.3d 1036……………………………………………………13

*Whitley v. Albers,*
    475 U.S. 312 (1986) ................................................................. 13, 14, 15

*Wilkins v. Gaddy,*
    559 U.S. 34 (2010) ...................................................................... 13, 14

*Willbourn v. City of Tulsa,*
    721 P.2d 803 (Okla. 1986)………………………………………………….30

## Statutes and Rules

U.S. Const.:
    U.S. Const., IV Amendment .......................................5, 8, 12, 13, 18, 19, 20, 21

U.S. Const., VIII Amendment ........................................................................ 8
U.S. Const., XIV Amendment ............................................................. 5, 8, 20

Fed. Stat.:

28 U.S.C. § 1367(a) ................................................................................... 26
28 U.S.C. § 1367(c)(3) .............................................................................. 27
42 U.S.C. §1983 ..................................................................... 9, 10, 11, 22, 26

Fed. R. Civ. P.:
Rule 8 ......................................................................................... 7, 8, 9, 14
Rule 12(b)(1) ................................................................... 5, 7, 9, 27, 28
Rule 12(b)(6) ........................................................................... 5, 7, 9
Rule 17(b) .............................................................................................. 25

Okla. Const.:
Okla. Const, Art. 2, Sec. 9 .......................................................... 5, 17, 26
Okla. Const, Art. 2, Sec. 30 .............................................. 5, 12, 17, 18, 26

Stat.:

19 § 1 ..................................................................................................... 25
19 § 3 ..................................................................................................... 25
21 § 99(a) ......................................................................................... 23, 24
21 § 99(b) ......................................................................................... 23, 24
21 § 533 ................................................................................................. 20
21 § 533(a) ............................................................................................ 21
21 § 533(c) ............................................................................................ 21
51 § 151 ................................................................................................. 28
51 § 152 ................................................................................................. 28
51 § 152.1 .............................................................................................. 28
51 § 153 ................................................................................................. 28
51 § 156 ........................................................................................... 29, 30
51 § 157 ........................................................................................... 29, 30
57 § 48 ................................................................................................... 20
57 § 52 ................................................................................................... 20

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LOREZ R. BRIGGS, as Next of Kin ) | |
| For the Estate of Lorez R. Chambers, ) | |
| Deceased, and ) | |
| MICHAEL R. BRIGGS, as Next of Kin ) | |
| For the Estate of Lorez R. Chambers, ) | |
| Deceased. ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. CIV-16-943-HE |
| ) | |
| OKLAHOMA COUNTY JAIL, ex rel. ) | |
| OKLAHOMA COUNTY BOARD OF ) | |
| COMMISSIONERS, Oklahoma ) | |
| County. State of Oklahoma, ) | |
| ) | |
|     Defendant. ) | |

## MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT [DOC.#10]  WITH BRIEF IN SUPPORT

On the morning of June 9, 2016, Maribel Villanueva was awakened by the sound of metal clanging in her backyard.  She looked outside to see that a man had pulled the exhaust pipe off the top of her concrete storm shelter and was now lying on top of the shelter.  The man rolled around on top of the storm shelter and started banging his head on the metal vent.  Ms. Villanueva watched as the man stood up and stumbled around her backyard.  At one point, he lost his balance, fell onto a staircase leading to her backdoor, bounced off and then fell to a concrete pad at the base of the stairs.  Still on the ground, the man drug himself on his stomach to a nearby bench and pulled himself up.  He attempted to lie on the bench but as he struggled to get comfortable, he fell to the ground onto the concrete below.

1

Because Ms. Villanueva could not speak English, her neighbor called police to report the suspicious person.  That suspicious person would later be identified as eight-time convicted felon and registered sex offender, Lorez Chambers.  Mr. Chambers did not live in the area and the reason for and manner in which he came to be there is unknown.  Also unknown is whether Mr. Chambers was involved in any altercations or sustained any injuries prior to police being called. No stranger to violence, Mr. Chambers had prior felony convictions for Burglary in the First Degree, Possession of a Firearm in the Commission of a Felony, Robbery, Rape, and Escape from a Penitentiary.

A lone female officer from the Oklahoma City Police Department responded to the location and found Mr. Chambers barefoot, sitting in the backyard, holding a naked Barbie doll, and fondling his genitals through his pants.  At the time, Mr. Chambers appeared to be under the influence of drugs.  The officer led Mr. Chambers to the front yard of the home where she attempted to arrest him for trespassing.  Mr. Chambers began to resist and a struggle ensued.

Two construction workers happened to be driving down Northwest 10th Street on their way to work when they saw two people fighting in the driveway of a home.  When they realized that a police officer was involved, the men stopped to assist the officer in gaining control of Mr. Chambers.  One of the men pinned Mr. Chambers' head to the ground while the other attempted to control Mr. Chambers' legs.  Despite repeated commands from the officer, Mr. Chambers refused to submit and continued to struggle against the officer and construction workers.  Although she was unable to gain complete control, the officer managed to place Mr. Chambers in handcuffs and call for assistance.

Other Oklahoma City police officers arrived to the scene and Mr. Chambers was taken into police custody.  Due to his combativeness, Mr. Chambers was placed in hobble restraints that bound his feet together.  The hobble restraints did not, however, minimize Mr. Chambers' aggression.  While

in the patrol car, Mr. Chambers repeatedly kicked the door of the vehicle.  When asked if he had taken any drugs, Mr. Chambers first admitted to police that he had used Methamphetamine and later told doctors he used Phencyclidine, commonly referred to as "PCP," "Angel Dust," or "wet," which is known to cause violent hostility in some users.

Mr. Chambers was transported to the Oklahoma County Detention Center by police where he was to be held on charges of Resisting Arrest, Public Intoxication, and Trespassing.  Oklahoma City police officers called ahead to advise the Detention Center that assistance was needed in receiving Mr. Chambers into the jail due to his combativeness.  Detention officers assisted Oklahoma City Police in removing Mr. Chambers from the patrol car and removing restraints.

As with all inmates presented for booking, after being pat searched Mr. Chambers was taken to a window to be medically pre-screened prior to booking.  During this process, the arrestee is escorted by the arresting officer and is still in the legal custody and control of the arresting officer. Detention and medical personnel observed Mr. Chambers to have cuts to both lips and to have swelling on the side of his head.  Medical personnel inquired of the Oklahoma City police officer as to how Mr. Chambers' mouth was injured; the officer advised that Mr. Chambers' face was scraped by gravel on the ground while he was aggressively resisting arrest. [1]

Medical personnel attempted to take readings of Mr. Chambers' vital signs, but his incessant movements and refusal to cooperate prevented them from doing so.  Medical and detention staff described Mr. Chambers as extremely agitated, uncooperative, yelling and speaking incoherently,

---

[1] Oklahoma City Police should not have transported Chambers to the jail without first taking him to the hospital for medical treatment of his injuries from the use of force used during arrest per State Statute.

continually thrashing, and sweating profusely.  As he yelled and flailed about, Mr. Chambers spit blood on the pre-screen window necessitating staff to place a spit hood on his head.  Based on his behavior, medical staff believed Mr. Chambers to be in a possible state of drug overdose and refused to accept him into the Detention Center for booking.  This means that Oklahoma County refused to take Mr. Chambers into their legal custody and at all times during his time in the booking area and pre-screening area, he was in the custody of Oklahoma City Police.

After Mr. Chambers are denied clearance for booking, the Oklahoma City police officers called for EMSA to transport Mr. Chambers from the jail to the hospital.  While waiting for EMSA to arrive, officers from the police department and the Detention Center were forced to restrain Mr. Chambers as he continued to thrash about.  When paramedics arrived, they injected him with Haldol and Versed to calm him down during transport.  Nevertheless, Mr. Chambers' agitated and combative state continued at the hospital where he was again placed in restraints.

Mr. Chambers later died on June 19, 2016, ten days after his arrest and failed booking attempt at the Oklahoma County Detention Center.  At the present time, an investigation by the Oklahoma City Police Department into the circumstances leading up to and surrounding Mr. Chambers' death is ongoing as is the medical examiner's determination of cause of death.

## PROCEDURAL BACKGROUND

On July 28, 2016, Plaintiffs filed a Petition in state District Court and case was removed to this Court on August 17, 2016.  Defendant's filed a Motion to Dismiss on August 18, 2016.  [DOC.#4].  In Response to the Motion to Dismiss, Plaintiffs acquiesced in the dismissal of the federal constitutional claims and ask for remand back to state court asserting Plaintiffs would only be pursuing recovery under the Oklahoma Constitutional *Bosh* Claim.  [DOC.#8]  This Court issued an

4

Order granting Defendants' Motion to Dismiss on November 10, 2016 but also gave Plaintiffs leave to file an amended complaint. [DOC.#9]. Plaintiffs' filed a timely Amended Complaint with this Court on December 8, 2016. [DOC.#10]. However, in spite of previously stating that Plaintiffs were only pursuing an Oklahoma Constitutional Claim (a/k/a/ *Bosh* claim) for excessive force, Plaintiff's Amended Complaint again includes a municipal claim for violation of Decedent's Fourth and Fourteenth Amendment Rights under the United States Constitution for the unreasonable seizure and unlawful use of excessive force based on a custom or policy. [DOC.#10, ¶¶25, 26]. As such, Plaintiff's Amended Complaint [DOC.#10] before this Court has two primary claims against the Defendant: (1) an Oklahoma *Bosh* claim for excessive force under Art. 2, §§ 9 & 30 and (2) a United States Constitutional claim for unconstitutional practices and customs of the County.

## STANDARD FOR DISMISSAL UNDER RULES 12(B) (1) AND (B) (6)

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a claim for relief on the grounds that the plaintiff failed to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b) (6). "The court's function on a Rule 12(b) (6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's Amended Complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (*citations and quotations omitted*).

As provided by the Federal Rules of Civil Procedure, a party may urge dismissal of a claim when that the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b) (1). Rule 12 (b) (1) subject matter jurisdiction challenges may take two different forms. "The moving party may (1) facially attack the Amended Complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis

upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (*quoting Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 1995)). Either way, the plaintiff bears the burden of establishing subject matter jurisdiction. *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

A motion to dismiss may be granted if, "viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain 'enough facts to state a claim to relief that is plausible on its face.'" *Anderson v. Suiters*, 499 F.3d 1228, 1232 (10th Cir. 2007); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 120 S.Ct. 1937, 1949 (2009). When evaluating a complaint, while all well pled "factual assertions are taken as true, legal conclusions are not." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1144 (10th Cir. 2013).

"Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In reviewing the sufficiency of a plaintiff's claim, a court should not accept "mere conclusions characterizing pleaded facts." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990); *see also Twombly*, 550 U.S. at 555 (stating "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). "[T]he complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

When considering a Rule 12(b) (1) motion, the court may also consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir. 1995). A court generally considers only the contents of the Complaint and its attachments when ruling on a Rule 12(b) (6) motion. *Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir.2010). "Exceptions to this general rule include: documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes their authenticity; and 'matters of which a court may take judicial notice.'" *Henson v. Bank of Am.,* 935 F.Supp.2d 1128, 1136 (Dist. Colo. 2013). It is thus procedurally appropriate to consider documents mentioned and relied upon by Plaintiff in the Complaint. *Frazier v. Miller,* 2015 WL 3466831, *5 (Dist. Colo., May 29, 2015).

I.     PLAINTIFFS' AMENDED COMPLAINT IS FACTUALLY DEFICIENT AND FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Plaintiffs contend that Lorez R. Chambers' rights under the United States Constitution and Oklahoma Constitution were violated by Defendant, Board of County Commissioners of Oklahoma County ("BOCC"), when a number of unidentified Detention Officers allegedly used excessive force upon Chambers when he was brought into the jail under arrest by Oklahoma City Police. [DOC.#10]. However, Plaintiffs' Amended Complaint [DOC.#10] is so generic and vague that it fails to give proper notice of what constitutional right was actually violated by the Defendant BOCC as required by Federal Rule of Civil Procedure, Rule 8.  In *Robbins v. Oklahoma ex rel. Dept. of Human Servs.,* 519 F.3d 1242 (10th Cir. 2008), the Court stated:

> Fair notice under Rule 8(a)(2) depends on the type of case.  In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities.  Therefore, it is particularly important in

7

such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective actions against the State.

Rule 8 requires a federal complaint to contain a short and plain statement of the grounds for the court's jurisdiction, a short and plain statement of the claim showing entitlement to relief, and a demand for the relief sought.  Fed. R. Civ. P. 8(a).  Each allegation in a complaint must be simple and direct.  Fed. R. Civ. P. 8(d)(1).  Rule 8 is designed to ensure that a complaint meets its two-fold function, namely, to give fair notice of the basis for the claim to opposing parties while also allowing a court to conclude that the allegations, if proven, show that the plaintiff is entitled to relief.  *Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n*, 891 F.2d 1473, 1480 (10th Cir. 1989).

Federal claims for excessive force can arise under the Fourth, Fourteenth, or Eighth Amendments of the United States Constitution and the classification of a federal claim based on which constitutional right invoked will impact what legal test is used and how the claim is analyzed.  *Estate of Booker v. Gomez,* 745 F.3d 405-418-19 (10th Cir. 2014).    Likewise, an Oklahoma Constitutional claim under Article 2, Sections 9 and 30, for excessive force has been recognized to apply to hold only municipalities liable under a theory of *respondeat superior.  Bosh v. Cherokee Building Authority,* 2013 OK 9, 305 P.3d 994.  However, when a cause of action against individual officers exists or could be brought under the GTCA, then no *Bosh* claim is available.  *Perry v. City of Norman,* 2014 OK 119, ¶1,  341 P.3d 689 (holding that a claim for excessive force by police officers and other law enforcement personnel may not be brought against a municipality when a cause of action under the OGTCA is available).  These factors regarding the legal elements and legal tests

that are applicable to the claims pled must be taken into consideration when determining if the pleadings are sufficient under Rule 8 or the claim itself is plausible under Rule 12(B)(1) & (6).

A. *The Amended Complaint fails to assert a viable federal municipal constitutional claim against the Defendant, BOCC.*

Plaintiff's Amended Complaint is subject to dismissal pursuant to Fed.R.Civ.P. 8 because the six page Amended Complaint contains nothing but vague, generalized allegations that lack the degree of specificity required by federal pleading standards. Plaintiffs' have named as a Defendant only the Oklahoma County Board of County Commissioners *ex rel* Oklahoma County Jail ["BOCC'"]. The facts in the Amended Complaint allude that the injuries to Chambers were caused by two separate use of force incidents by unnamed "Detention Officers" [DOC.#10, ¶¶8, 11] and that jail staff failed to promptly provide medical assistance to Mr. Chambers after force applied. [DOC.#10, ¶¶14]. However, Plaintiffs do not name specific individual actors or name any specific custom or policy of the BOCC that caused excessive force to be used and/or medical treatment to be delayed.

The inclusion of only a single municipal defendant in the pleadings indicates that the only kind of federal constitutional claim that can be pled by Plaintiffs' is a Section 1983 municipal liability claim. As a result, Plaintiffs' pleadings are factually insufficient because Plaintiff does not assert or reference any particular custom or policy attributable to the BOCC that caused the constitutional rights of Mr. Chambers to be violated. [DOC.#10]. Instead, Plaintiff's Amended Complaint does nothing more than recite bald, conclusory statements of the required legal elements, which by law are not entitled to be taken as true. *Iqbal*, 556 U.S. at 678.

It is well settled that factual allegations in a federal complaint must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. While an action under Section

9

1983 may be brought against a municipal body or other local government entities, recovery is limited to acts that are officially sanctioned by such an entity; it is for this reason that a plaintiff must demonstrate that the entity's "policy or custom" caused the constitutional tort.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986).  To establish the existence of a "custom," a plaintiff must demonstrate: (1) a continuing, widespread, and persistent pattern of misconduct; (2) deliberate indifference or tacit approval of misconduct by policy-making officials; and (3) injury to the plaintiff as a result of the custom.  *Gates v. Unified Sch. Dist. No. 449 of Leavenworth Cnty.* 996 F.2d 1035, 1041 (10th Cir. 1993).  All three of these elements must be met to impose constitutional liability upon a municipal Defendant.

Municipal liability may also be imposed if the action is taken pursuant to a "policy" provided the plaintiff demonstrates: (1) a policy adopted by the municipality or officials responsible under the law for making policy in the area; or (2) a decision made by an official with final policy-making authority within the area.  *Pembaur*, 475 U.S. at 480-81; *Randle*, 69 F.3d at 447-48.  The requirement that a plaintiff demonstrate the existence of a custom or policy is "intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."  *Pembaur*, 475 U.S. at 479 (*emphasis in original*).  Concomitantly, a government body is not constitutionally liable under Section 1983 for the acts of an employee under a theory of *respondeat superior.  Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978).

In *Twombly*, 550 U.S. at 555, the Supreme Court held that the pleading requirements require factual support and that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." Such factual pleadings must also be plausible and non-conclusory or speculative to be entitled to the presumption of truth. *Berneike v. CitiMortgage, Inc.,* 708 F.3d 1141, 1144 (10th Cir. 2013). Applying these principles to the case at bar, Plaintiffs' claim for relief must be dismissed because Plaintiff's Amended Complaint wholly fails to identify or infer a BOCC custom or policy that existed at the time which directly caused a violation of Mr. Chambers' constitutional rights; or that the BOCC was the entity responsible for establishing such custom or policy at the jail. All the Amended Complaint does is state in conclusory fashion that a custom or policy of the Defendant caused the detention officers to use excessive force on Mr. Chambers and that there is a causal nexus between his injuries and the custom and policy. [DOC.# 10, p.4, ¶¶ 25, 26]. As a result, Plaintiffs amended pleadings again fail to adequately support a Section 1983 municipal constitutional claim. Due to these pleading deficiencies, all federal claims in Plaintiff's Amended Complaint [DOC.#10] must be dismissed.

B.     *The Amended Complaint fails to support a claim for "excessive" force against the Defendant, BOCC.*

Under federal law, a government body is not constitutionally liable under Section 1983 for the acts of an employee under a theory of *respondeat superior.* *Monell v. New York City Dep't of Soc. Serv.,* 436 U.S. 658, 691 (1978). However, pursuant to Oklahoma law, the state constitutional standard is the exact opposite. According to the Oklahoma Supreme Court's Ruling in *Bosh v. Cherokee Building Auth.,* 2013 OK 9, 305 P3d 994, a municipality may be held liable under the Oklahoma Constitution pursuant to a theory of respondeat superior for government actors who use excessive force upon a seized person while acting within the scope of their governmental duties. *Id.* at ¶1. However, even though there is this new distinction between state and federal constitutions

with regard to the application of "respondeat superior", there is still one common factor to establishing excessive force liability under the U.S. and Oklahoma Constitutions; that the force used upon the seized individual must be objectively unreasonable and "excessive" based on the facts and circumstances that exist at the time force is applied. *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

It is well settled that Oklahoma Courts have historically chosen to interpret Article II, § 30 of the Oklahoma Constitution the same as the Fourth Amendment because the two provisions are nearly identical in wording. *Gomez v. State*, 2007 OK CR 33, ¶ 6, 168 P.3d 1139, 1147. While interpretation of Oklahoma constitutional provisions is not bound by the United States Supreme Court's interpretations of similar federal provisions, Oklahoma Courts have normally rejected requests to apply different standards to the Fourth Amendment. *See Long v. State,* 1985 OK CR 119, ¶6, 706 P.2d 915, 917. Thus, the use of federal constitutional interpretation to similar to state constitutional provisions, is based on well-reasoned legal principles and long lasting precedent by the Oklahoma Supreme Court. *Id.* Further, there is no indication in *Bosh* or other Oklahoma case law that the test for what constitutes "excessive" force would be different under the Oklahoma Constitution than it is under the Federal Constitution.

The Fourth Amendment is not, of course, a guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures. *United States v. Sharpe,* 470 U.S. 675, 682, 105 S. Ct. 1568, 1573, 84 L. Ed. 2d 605 (1985). The ruling in *Bosh v. Cherokee County Building Authority,* 2013 OK 9, 305 P.3d 994 did not change the meaning of what constitutes "excessive force" or what factors that Court will consider when making a determination whether force used is reasonable or "excessive." *Id.* In fact, the Oklahoma the standard for determining excessive force is still the same

as applied by the U.S. Supreme Court in *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) and in *Whitley v. Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986).  *See Washington v. Barry*, 2002 OK 45, ¶9, 55 P.3d 1036 (applying federal standards to the determination of "excessive" force).   Thus, the "excessive" force standard to be applied to a pretrial detainee, like Plaintiff, regardless of whether the claim is brought under the U.S. Constitution or the Oklahoma Constitution, is to require a showing that the force purposely or knowingly used against him was objectively unreasonable. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015); *Washington v. Barry*, 2002 OK 45, ¶9, 55 P.3d 1036.

In this case, Plaintiff's pleadings again fall short of providing non-conclusory factual aversions that the force used was objectively unreasonable.   Plaintiff's Amended Complaint contains factual averments of a serious injury that was caused by force used by County Detention Officers. [DOC.#10]. However, proof of injury during a use of force incident does not in and of itself make the force used "unreasonable" under constitutional standards. *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S. Ct. 1175, 1178, 175 L. Ed. 2d 995 (2010). That is because claims of excessive force are to be judged, not by the extent of the injuries produced, but by the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor,* 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

In *Graham*, the Court held that determining the objective reasonableness of a particular seizure under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.*  490 U.S., at 396, 109 S.Ct. 1865 (internal quotation marks omitted). The inquiry requires analyzing the totality of the circumstances. Id; see also *Plumhoff v. Rickard*, 134 S.

Ct. 2012, 2020, 188 L. Ed. 2d 1056 (2014).  Objective reasonableness turns on the facts and circumstances of each particular case and must be viewed from the perspective of a reasonable officer on the scene, including what the officer knew at the time and not with 20/20 hindsight. *Graham v. Connor,* 490 U.S. at 396; *Kingsley v. Hendrickson*, 135 S. Ct. at 2473.

The degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, all depends on context.  "Context matters in notice pleading. Fair notice under Rule 8(a) (2) depends on the type of case...." *Phillips v. County of Allegheny,* 515 F.3d 224, 231–32 (3rd Cir. 2008); *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). Plausibility" in this context refers to the scope of the allegations in a complaint and if they are so general that they encompass a wide swath of conduct, the Plaintiffs have not nudged the claim across the line from conceivable to plausible. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

While evidence of injury and death are significant factors to consider, they are not the only factors considered when determining if force was excessive.  The U.S. Supreme Court has stated that "[i]njury and force, however, are only imperfectly correlated and it is the latter that ultimately counts. *Wilkins v. Gaddy*, 559 U.S. at 38, 130 S. Ct. at 1178.  The "core judicial inquiry" was not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 995, 117 L.Ed.2d 156 (1992); see also *Whitley v. Albers,* 475 U.S. 312, 319–321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). Thus, it is well established that factual evidence of significant injury is but one factor courts consider when determining if the use of

force was reasonable or excessive based on the totality of the circumstances. *Whitely*, 475 U.S. at 321.

As pled. Plaintiff's facts do not aver enough information to plausibly determine that the forced used on Chambers was "excessive." This is because of the total lack of context and circumstanced provided by the Plaintiff as to what was occurring when force was used (i.e. the actions and attitudes of the unnamed Detention Officers and Chambers). In the very sparse six page Amended Complaint, Plaintiff describes Mr. Chambers as having been injured by four (4) Detention Officers, who in response to cries of pain, slammed his head into a window in the medical pre-booking area and that later on, fifteen (15) unidentified Detention Officers placed Chambers on the ground and laid on top of Chambers to "restrain" him. [DOC.#10, pp. 2-3]. Plaintiffs go on to state Mr. Chambers was bleeding from his head, was denied access to EMSA medical personnel by Detention Officers, and was transported by non-medical personnel by Oklahoma City Police to the Hospital, where he later died after slipping into a coma. [DOC.#10, pp. 2-3]. All of these facts establish that force was used on Mr. Chambers in the booking area of the jail and that an injury occurred from the use of force. However, none of the facts provide a totality of the circumstances or context sufficient to describe why or how the force used was actually excessive or unreasonable. Without the necessary factual context, the Amended Complaint is simply too sparse to even remotely speculate that the force was unreasonable. Plaintiffs wants this Court to infer the force used was excessive based solely on the number of officers involved and the seriousness of the injury. However, such a leap or interpretation would be based on speculation and conjecture, which is discouraged by *Twombly*.

Plaintiffs Amended Complaint does nothing to describe what Chambers was doing or not doing when the force was employed. [DOC.#10, ¶¶23-25]. While it is true Plaintiff states that

Chambers did not act in a manner that would justify the use of "lethal force", this again is a vague and conclusory statement that is devoid of actual facts to support the conclusion that Chambers did nothing to justify the use of force [DOC.#10, ¶27].  Further, "lethal force" is a term of art that has no factual application in this case based on what little facts are pled considering that physical use of the body to restrain an arrestee is not typically classified as a form of "lethal" or deadly force.  In addition, even if the application of force caused death, this in and of itself does not mean the forced used was "lethal force."  Nor does the use of actual lethal or deadly force automatically make, imply or infer such force is unreasonable under constitutional standards. Again, context is the key.  Deadly force may and has been found to be reasonable and not excessive in certain circumstances; such as when a reasonable officer in that position would have probable cause to believe that there was a threat of serious physical harm to himself or to others. *Sevier v. City of Lawrence,* 60 F.3d 695, 699 (10th Cir.1995).

Plaintiffs' Amended Complaint lacks factual context about what occurred in the jail that led up to the use of force.  Without more facts about actions and behavior of all parties, including Chambers, there is simply no way to infer the forced used was excessive simply because multiple officers were involved and a serious injury was sustained.  [DOC.#10, pp.2-3].  Plaintiffs have simply sanitized their Amended Complaint to the extent that they can't show sufficient facts that would nudge the pleadings beyond a speculative level and allow a Court to reasonably infer the forced used was "excessive."  Even when Plaintiffs' factual allegations as pled are taken as true, there is still not enough facts to demonstrate a plausible inference of unreasonable force.  As a result, Plaintiffs' claim

of "excessive force" brought under both the Oklahoma and Federal Constitutions, fail under the pleading requirements of *Twombly*.

PROP. II:     DETENTION OFFICERS WERE SERVANTS ASSISTING OKLAHOMA CITY
              POLICE DURING THE USE OF FORCE; THUS THE COUNTY IS IMPROPER
              PARTY FOR A RESPONDEAT SUPERIOR CLAIM UNDER BOSH

Plaintiffs have brought an Oklahoma Constitutional *Bosh* Claim under Art. 2, §§9, 30 against the Defendant, BOCC, for the alleged use of excessive force by unnamed Detention Officers upon Lorenz Chambers after he was brought into the jail for booking by Oklahoma City Police on June 9, 2016.   Pursuant to Oklahoma case law, a municipality may be held liable under the Oklahoma Constitution under a theory of *respondeat superior* for government actors who use excessive force upon a seized person while acting within the scope of their employment and while fulfilling their governmental duties.   *Bosh v. Cherokee Building Auth.,* 2013 OK 9, 305 P3d 994.   "*Respondeat superior* is a legal doctrine holding an *employer* liable for the willful torts of an employee acting within the scope of employment in furtherance of assigned duties."   *N.H. v. Presbyterian Church (U.S.A.),* 1999 OK 88, ¶ 13, 998 P.2d 592, 598 (emphasis added).   It is well settled in Oklahoma that to impose liability on the basis of *respondeat superior,* "the relationship of master and servant must exist."   *Jordan v. Cates,* 1997 OK 9, ¶ 9, 935 P.2d 289, 292; *Bryson v. Oklahoma Cty. ex rel. Oklahoma Cty. Det. Ctr.,* 2011 OK CIV APP 98, ¶ 12, 261 P.3d 627, 633.

In this case a master servant relationship between the BOCC and the Detention Officers did not exist at the time the force was used on Chambers in the booking area of the jail.   As a result, Plaintiff's Oklahoma Constitutional *Bosh* claim is also subject to dismissal as a matter of law.   This is because under Oklahoma Statute, the County Detention Officers were acting as servants and

agents of Oklahoma City Police when they aided in restraining Chambers, who at was seized and under the legal custody and control and authority of Oklahoma City.

A review of Article II, section 30 of the Oklahoma Constitution and the Fourth Amendment of the U.S. Constitution demonstrate that each provision contains almost exactly the same wording, and in substance are identical. The Oklahoma Supreme Court has recognized the close relation of the Oklahoma Constitution's Article II, § 30 and the Fourth Amendment to the United States Constitution by stating: "[t]his provision of our Constitution [Art. II, Section 30] is almost an exact copy of the fourth amendment of the Constitution of the United States...." *Long v. State,* 1985 OK CR 119, ¶ 6, 706 P.2d 915, 917 (quoting *DeGraff v. State,* 2 Okla. Cr. 519, 103 P. 538 (1909)).  As a result, Oklahoma Courts historically turn to the provisions of the United States Constitution, as interpreted by the Supreme Court of the United States, for guidance.  *State v. McNeal*, 2000 OK CR 13, ¶¶ 10-11, 6 P.3d 1055, 1057.   Thus, what constitutes a "seizure" or "custody" for a federal Fourth Amendment analysis will likewise suffice as a "seizure" or "custody" under the Oklahoma Constitution.

A.    *Chambers at all times was seized only by Oklahoma City Police*

In this case, it is undisputed Mr. Chambers was arrested and seized by Oklahoma City Police and then transported to the Oklahoma County Detention Center under Oklahoma City Police jurisdiction.  [DOC.#10, ¶4].  Per the Amended Complaint, Plaintiffs' admit that police reports indicate Chambers was never booked into the legal custody of Oklahoma County. [DOC.#10, p. 2, ¶5]. Plaintiffs' Amended Complaint also factual avers that Oklahoma City Police was the law enforcement agency that transported Chambers to the hospital from the jail, which is factual evidence that the

physical and legal custodial relationship was between Chambers and the Oklahoma City Police. [DOC.#10, ¶17].

Plaintiffs encourage this Court, without reason, to ignore Oklahoma City Police reports as to the determination of custody just so Plaintiffs can claim the County had legal custody of Mr. Chambers while he was in the jail [DOC.#10, ¶5].  However, this factual averment that the County had custody of Chambers is not entitled to the assumption of truth because not only is the averment conclusory, but the determination of when an individual is "seized" under the Fourth Amendment is not a fact question.  It is well settled that the ultimate question regarding whether a search or seizure has occurred is a question of law that is reviewed *de novo.  U.S. v. Hudson,* 210 F.3d, 1184, 1190 (10th Cir. 2000).

A person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980).  An arrest is a "seizure" within the constitutional prohibition against unreasonable seizures. See *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968).  Thus, for Chambers, the "seizure" that invoked his Fourth Amendment rights occurred at the initial time of the arrest and continued throughout the process.  Thus, there is but one seizure that occurred in this case and that is the arrest and detention of Chambers by Oklahoma City Police.  [DOC.#10, ¶5].

In addition to constitutional case law that makes the issue of "seizure" a legal question, the determination of custody by a county sheriff or jailer is also government by state statute.  State statute

actually dictates when a county jail can accept or refuse custody of an inmate. See 21 Okla.Stat.

§533.   Title 57 Okla. Stat. 1981, § 52, provides, in pertinent part, as follows:

> "It shall be the duty of the sheriff of each county to provide bed clothing, washing, board and medical care when required, and all necessities for the comfort and welfare of *prisoners* ..."

*Id.* (Emphasis added). For the purposes of a governmental seizure under the Fourth and Fourteenth

Amendments as well as the Oklahoma Constitution, custody is the key in determining which agency

may be held liable for actions or injures that occur during the agency's period of custody or seizure.

See *Hillcrest Medical Center v. State,* 675 P.2d 432 (Okla. 1983); 1984 OK AG 93, ¶6.

In *Hillcrest,* the Oklahoma Supreme Court established a rule that the political subdivision that

has actual custody of the prisoner is the political subdivision that is liable for the prisoner's immediate

medical needs. *Id.*   It has also been held that the County Sheriff assumes custody and liability for

an inmate only when the prison is actually placed in the Sheriff's custody.  See *State ex rel. Dep't of

Human Servs. v. Bd. of Cty. Comm'rs of McClain Cty.,* 1992 OK 29, 829 P.2d 961, 962.  A County's

duty to accept custody of a prisoner into a county jail does not arise until the custody is actually

tendered by the arresting officer to the jail administrator.  *Hospital Founders Association v. Oklahoma

Dept. of Public Safety,* 892 P.2d 671 (Okla. Ct. App. 1995).  The tendering process is also referred

to as "booking." See 57 Okla. Stat. 1994 §48 (county sheriff is required to maintain a book or

computer record of each prisoner with a date and time of commitment into and release out of jail

facility).  Thus, until booking is complete, as a matter of law the arrestee is not in the "custody" of the

County jail.

It must also be pointed out that a county sheriff does not automatically assume custody of every prisoner the steps through the door of the county jail.  It is true that a county jail must accept a prisoner and place the prisoner "on the books" when required to do so by law or contract. 21 Okla. Stat. § 533(A).  However, the sheriff's statutory duties to care for jail inmates do not arise until the Sheriff has actual legal custody of prisoners committed to the Sheriff's care in a county jail facility. 2004 OK AG 17, ¶2.  Furthermore, Sheriffs in Oklahoma are not required by statute to accept injured prisoners into jail custody. 21 Okla. Stat. 2005 §533(C).  In fact, a county sheriff or jail administrator actually owes a duty to refuse injured prisoners admission and force the arresting agency to provide the injured prisoner with medical care.  See *§533(A) (exempts jailers from neglect of duty if refusal of a prisoner into custody is based on medical condition).*  Further, §533(C) creates a duty on the arresting agency to take the injured arrestee for medical treatment before booking into the jail.  This duty is codified as follows:

> **Any person coming into contact with a peace officer prior to being actually received into custody at a jail facility** . . . during the time of arrest, detention, transportation, investigation of any incident, accident or crime, **who needs emergency medical treatment for an injury** or condition that threatens life or threatens the loss of use of a limb, *shall* **be taken directly to a medical facility or hospital** for such emergency medical care.

*Id. (Emphasis added).* Thus, clearly if an arrestee is refused booking at the jail due to medical need, they are not committed to the custody of the County nor can the County be considered their custodial agent until accepted and booked.

In this case, Chambers was under arrest by Oklahoma City Police and as a result, he was seized for the purposes of the Fourth Amendment by that law enforcement agency.  Merely walking into the Oklahoma County Detention Center booking area of the jail does not constitute a change in

legal custodial status or operate as a form of secondary "seizure" and for the purposes of Section 1983.  This is because the lawful seizure of Mr. Chambers by Oklahoma City Police was an ongoing process. The Supreme Court has stated that if an arrestee is taken to the police station, that is no more than a continuation of the custody inherent in the arrest status. *Illinois v. Lafayette*, 462 U.S. 640, 645, 103 S. Ct. 2605, 2609, 77 L. Ed. 2d 65 (1983).

Further, the self-serving statement that Decedent was in the custody of the county rather than custody of the arresting agency, Oklahoma City Police Department, should not be assumed as true for the purposes of this Motion to Dismiss.  When evaluating a complaint, "all well pled factual assertions are taken as true, legal conclusions are not." *Berneike v. CitiMortgage, Inc.,* 708 F.3d 1141, 1144 (10th Cir. 2013). In this case, per police reports, when Mr. Chambers arrived the jail he was refused admittance based on his observed injuries and behavior. [DOC.#10, ¶5].   The jail administrators had the statutory right to refuse to admit Chambers into custody of the jail based on medical observations. This lack of custody (a/k/a "seizure") by Oklahoma County is thus a legal element established as a matter of law by statute.  As a matter of law, the "seizure" of Chambers was performed only by Oklahoma City Police for the purposes of Constitutional liability.

B.     *By Statute, Detention Officers were acting as servants of Oklahoma City Police when restrain Chambers in the booking area.*

According to Plaintiff's pleadings, during pre-booking medical screening Chambers' head was smashed against a window by four Detention Officers and then later, fifteen or more Detention Officers placed Chambers on the floor and laid on top of him to restrain him.  [DOC.#10, pp. 2-4]. However, at the time these "restraints" occurred, Mr. Chambers was seized virtue of his arrest by Oklahoma City Police and in that agency's lawful custody as a mater of law.  As a result, the

Detention Officers were merely acting as the agents for Oklahoma City Police by assisting the arresting agency with restraining Chambers during the booking process.

The premise of master servant as it pertains to responsibility of injuries sustained by third persons is well settled.  The basic inquiry in any *respondeat superior* case in which the specific act of negligence by the subordinate is whether the superior had the right to control, or actually did control in some measure, the actions of the subordinate in respect to the transaction out of which the injury arose. *Texaco, Inc. v. Layton*, 1964 OK 51, 395 P.2d 393, 397.  The legal custody and control of Chambers was never relinquished by Oklahoma City Police.

The concept of a master/ servant relationship between law enforcement agencies who aid or assist other law enforcement agencies  has also been codified in Oklahoma at Title 21 Okla. Stat. §99(A) & (B).  Section 99(A) states a peace officer may enforce the laws of the state throughout territorial bounds under the following circumstances: "1.  In response to an emergency involving an immediate threat to human life or property" and "4. In response to a request for assistance by a peace officer with investigatory or territorial jurisdiction." 21 Okla. Stat. §99(A)(1) & (4).  In addition, when a peace officer does render assistance in accordance with §99(A), subsection (B) states:

> While serving as peace officers of the state of Oklahoma and rendering assistance under the circumstances enumerated above, peace officers shall have the same powers and duties **as though employed by and shall be deemed to be acting within the scope of authority of the law enforcement agency in whose or under whose investigatory or territorial jurisdiction they are serving.**

*21 Okla. Stat. §99(B). (Emphasis added).*  This codification of the master and servant relationship that exists when one peace officer aids another peace officer from a different jurisdiction or territory during an emergency or at the request another officer for a  legitimate reason.  Without

23

this provision, law enforcement agencies may not want to assist others in needed for fear of being subjected to liability.  By removing the potential for liability, law enforcement agents can assist each other when needed, which serves the greater public good.   Such cooperation among law enforcement is well established and encouraged in Oklahoma. *See also Smith v. State*, 1982 OK CR. 89, 656 P.2d 277 (OHP requested Tulsa police to take over murder investigation); *Dahl v. State, Dept. of Public Safety*, 2002 OK CIV APP 15 (38 P.3d 941) (arrest by city police officer outside of city jurisdiction was valid because he was assisting OHP in apprehending suspect); *Geary v. State, 1985 OK Cr 141, 709 P.2d 690, (Trooper called city cops for assistance and city cops made stop and arrest on highway outside of their jurisdiction on behalf of OHP).*

Per §99(A) & (B), the assistance rendered to Oklahoma City Police by Oklahoma County Detention Officers with Mr. Chambers in this case, including the use of force that occurred prior to acceptance of the prisoner into jail custody, was done and should be treated as if these Detention Officers were employees and agents of the Oklahoma City Police.  In restraining Chambers, the Detention Officers were responding to an emergency situation and/or at the request of Oklahoma City Police to assist with an arrestee who was in a condition that warranted denial of admission into jail custody.  As a result, statutorily, the unnamed Detention Officers were acting as servants to Oklahoma City Police and as such, must be treated as if they were employees of Oklahoma City Police Department.  By statute, the master servant relationship shifted from the BOCC to Oklahoma City Police and this change in master/servant status means that the BOCC is not correct party in interest to be sued for any Oklahoma Constitutional claim violation of Mr. Chambers' rights based on the theory of *respondeat superior.*

24

As a matter of law Mr. Chambers was Oklahoma City Police's arrestee and not in the custody of the County.  As a matter of law the assistance by Detention Officers to "restrain" Oklahoma City's arrestee renders them agents and servants of that law enforcement entity at the time force was used on Chambers.  As a matter of law Oklahoma City, rather than Oklahoma County, is the master and only proper party that may be sued under a *Bosh respondeat superior* Oklahoma Constitutional Claim.  Plaintiffs do not state a viable Oklahoma Constitutional claim against the BOCC.  Dismissal of the BOCC is warranted as a matter of law.

PROP. III:   PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF AGAINST THE OKLAHOMA COUNTY JAIL.

In the present case, Plaintiffs name as Defendant the Oklahoma County Board of County Commissioners *ex rel* "Oklahoma County Jail."  [DOC.#10, Amended Complaint].  To the extent Plaintiffs are claiming the "Oklahoma County Jail" is a separate and distinct legal entity apart from the BOCC, the "Oklahoma County Jail" not proper party to suit.  Rule 17 of the Federal Rules of Civil Procedure provides that a non-corporate entity's capacity to be sued is determined by the law of the state in which the district court is located.  Fed. R. Civ. P. 17(b).  Under Oklahoma law, each organized county has the capacity to sue or be sued.  Okla. Stat. tit. 19, § 1.  The authority of the county as a body corporate and politic is exercised by its Board of County Commissioners.  Okla. Stat. tit. 19 § 3.  While the Board of County Commissioners has the capacity to be sued, the "Oklahoma County Jail" does not.

Although Oklahoma courts have not addressed this issue by published opinion, other jurisdictions have concluded that a county or local jail does not have legal capacity to be sued.  *See, e.g., Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003)*; cf. Dean v. Barber*, 951 F.2d

1210, 1214-15 (11th Cir. 1992) (stating police and sheriff's departments are not usually considered legal entities subject to suit).  Similarly, a number of unpublished decisions of Oklahoma district courts have concluded that a county jail is not a suable entity.  *See, e.g.*, *Stout v. Whetsel*, No. CIV-10-1327-HE, 2011 WL 2160788, at *3 (W.D. Okla. March 10, 2011); *Flow v. Thomas*, No. CIV-09-1262-F, 2010 WL 3522339, at *9 (W.D. Okla. July 30, 2010).  Because the "Oklahoma County Jail" has no legal capacity, it is not a proper party to suit and any cause of action intended against the Jail itself must be dismissed with prejudice.

## VI. PLAINTIFFS' S STATE LAW CLAIM SHOULD BE DISMISSED DUE TO THE LACK OF SUPPLEMENTAL JURISDICTION.

In this case Plaintiff's Amended Complaint clearly contained a federal constitutional claim for excessive force.  [DOC.#10, ¶¶25,26]. However, as shown above in Proposition I, Plaintiff's federal constitutional claim must be dismissed for lack of factual averments of a custom or policy attributable to the injuries to Chambers in this case. Should this Court dismiss Plaintiff's Section 1983 constitutional claims, the only claim remaining before the Court is a State of Oklahoma constitutional claim brought pursuant to Art. 2, Sections 9 and 30 of the Oklahoma Constitution.

By statute, federal district courts have supplemental jurisdiction over state law claims that are part of the "same case or controversy" as federal claims. 28 U.S.C. § 1367(a).  The decision whether to exercise supplemental jurisdiction after dismissing every claim over which the court has original jurisdiction is purely discretionary.  O*sborn v. Haley,* 549 U.S. 225, 245, 127 S.Ct. 881, 166 L.Ed.2d 819; *Carlsbad Tech., Inc. v. HIF Bio, Inc.,* 556 U.S. 635, 129 S. Ct. 1862, 1864, 173 L. Ed. 2d 843 (2009).

"[W]hen a district court dismisses the federal claims, leaving only supplemented state claims, the most common response has been to dismiss the state claim or claims without prejudice." *United States v. Botefuhr,* 309 F.3d 1263, 1273 (10th Cir.2002) (quotation marks, alterations, and citation omitted). *See also* 28 U.S.C. § 1367(c) (3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction.").

If this Court is inclined to dismiss the Plaintiff's federal claims, it would likewise be appropriate to dismiss the state claims for lack of jurisdiction and because there is no compelling reason to retain the state claim.  See *Villalpando ex rel. Villalpando v. Denver Health & Hosp. Auth.,* 65 F. App'x 683, 688 (10th Cir. 2003).  Here, no answer has even been filed in the case and neither party has expended enough time or energy to require the Court to maintain jurisdiction over the state claim. See *Id.*  Dismissal the state claim concurrently with dismissal of the federal claims is justified.

## V.  PLAINTIFF'S SUPPLEMENTAL STATE LAW CLAIM MUST BE DISMISSED PURSUANT TO THE NOTICE REQUIREMENTS OF THE GTCA.

Plaintiffs aver that Defendant's actions violated Chambers' rights under the Oklahoma Constitution and the Federal Constitution.  [DOC.#10].  Without waiving any challenge to the personal jurisdiction and in the alternative, Defendant submits that Plaintiffs' state law theory of recovery must be dismissed for lack of subject matter jurisdiction based upon Plaintiffs' failure to comply with the notice provisions of the Governmental Tort Claims Act (GTCA).

As provided by Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may raise by motion to dismiss a claim that the court lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(b) (1).

Rule 12(b)(1) challenges may take one of two different forms. "The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 1995)). In either instance, it is the plaintiff that bears the burden of establishing subject matter jurisdiction. *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

Claims arising under the Oklahoma Constitution are governed by the GTCA. Okla. Stat. tit. 51, § 151 *et seq.* The GTCA generally adopts the doctrine of sovereign immunity for the state and its political subdivisions and waives it in part, but only in the manner provided by the Act. Okla. Stat. tit. 51, § 152.1(A). Section 153 of the Act provides:

> The state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment subject to the limitations and exceptions specified in this act and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state.

Okla. Stat. tit. 51, § 153(A). Included within the scope of this provision is immunity for losses resulting from violations of state tort and constitutional law. Okla. Stat. tit. 51, § 152(14).

Because sovereign immunity operates to bar a court from adjudicating a particular case, questions of the applicability of the GTCA are treated as jurisdictional in nature. *Chambers v. City of Ada*, 894 P.2d 1068, 1074 (Okla. 1995); *see also State v. Dixon*, 912 P.2d 842, 843-44 (Okla. 1996) (addressing applicability of GTCA as a jurisdictional question).

Plaintiffs' claim must be dismissed for failure to comply with the GTCA. The Oklahoma Supreme Court has recognized that "[t]he manner in which a party may overcome sovereign

immunity and maintain an action against the government is narrowly structured by the procedural

prerequisites in §§ 156 and 157." *Cruse v. Bd. of Cnty. Comm'rs*, 910 P.2d 998, 1002 (Okla. 1995).

The first of these requirements is that a claimant give the governmental entity notice of the potential

claim.  Section 156 of the Act states in relevant part:

> Any person having a claim against the state or a political subdivision within the scope of Section 151 et seq. of this title shall present a claim to the state or political subdivision for any appropriate relief including the award of money damages.

Okla. Stat. tit. 51, § 156(A).  The Act further states:

> [C]laims against the state or a political subdivision are to be presented within one (1) year of the date the loss occurs.  A claim against the state or political subdivision shall be forever barred unless notice thereof is presented within one (1) year after the loss occurs.

Okla. Stat. tit. 51 §156 (B).

Upon the proper filing of a notice of claim, the state or political subdivision is given ninety

days within which to approve or deny the claim, unless the parties agree, in writing, to extend the

deadline.  Okla. Stat. tit. 51 §157(A).  If the claim has not been approved within the operable ninety

day period, it is deemed denied by operation of law.  Okla. Stat. tit. 51, §157(A).  "A person may *not*

initiate a suit against the state or political subdivision unless the claim has been denied in whole or

in part."  Okla. Stat. tit. 51 §157(A)(emphasis added).  Upon the denial of the written notice of claim,

the claimant must bring suit within 180 days.  Okla. Stat. tit. 51, § 157(B).  "By the terms of §157(B),

the 180-day time limit regulates the time to bring a governmental tort claims action which the

Legislature has given its consent.  That is, failure to meet the 180-day time limit operates to bar

judicial enforcement of a claim against the government."  *Cruse*, 910 P.2d at 1004.

"Compliance with the written notice of claim and denial of claim provisions in §§ 156 and 157 are prerequisites to the state's consent to be sued and to the exercise of judicial power to remedy the alleged tortious wrong by the government." *Shanbour v. Hollingsworth*, 918 P.2d 73, 75 (Okla. 1996). It is for this reason a party must plead compliance with the GTCA to sufficiently allege the jurisdiction of the trial court. *Mansell v. City of Lawton*, 901 P.2d 826, 828 n.2 (Okla. 1995); *see also Willbourn v. City of Tulsa*, 721 P.2d 803, 805 (Okla. 1986); *Simington v. Parker*, 250 P.3d 351, 358 (Okla. Civ. App. 2011); *Girdner v. Board of Commr's of Cherokee County*, 227 P.3d 1111, 1115-16 (Okla. Civ. App. 2009).

Plaintiffs' Amended Complaint avers a tort claim was filed in September 2016 after this lawsuit was filed. Thus, the pleadings are devoid of evidence of compliance with mandatory provisions of the GTCA. This pleading defect alone warrants dismissal. Furthermore, Plaintiffs actually did fail to comply with Section 156 because the tort claim was not filed prior to litigation. *See* Exhibit 2, Affidavit.[2] Plaintiffs' failure to comply with the notice and denial of claim provisions of the GTCA operates to bar judicial enforcement of any state law theory of recovery. *Cruse*, 910 P.2d at 1004. This includes Oklahoma Constitutional Claims per the amended language of the GTCA. As a result, Defendant BOCC is entitled to dismissal of all state claims as a matter of law.

## CONCLUSION

WHEREFORE, the Defendant BOCC respectfully prays that this Court grant Defendants' Motion to Dismiss in all respects and for any and all other relief as may be just and proper.

---

[2] As Plaintiffs' failure to properly comply the GTCA divests this Court of subject matter jurisdiction, this Court may properly consider the referenced exhibit in a motion to dismiss without converting the same to a motion for summary judgment. *SK Finance SA v. La Plata Cnty.*, 126 F.3d 1272, 1275 (10th Cir. 1997); *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

Respectfully submitted,

BY: _____s/ Lisa Erickson Endres_____
LISA ERICKSON ENDRES, OBA# 16647
ASSISTANT DISTRICT ATTORNEY
320 Robert S. Kerr, Suite 606
Oklahoma City, OK 73102
Phone: (405) 713-1600; Fax: (405) 713-1749
dalisend@oklahomacounty.org

CERTIFICATE OF MAILING

This is to certify that a true and correct copy of the above and foregoing document was served on the following person, who is a registered participant of the ECF case filing system:

Rand Eddy
Mulinix Edwards Rosell & Goerke, PLLC
210 Park Avenue, Suite 3030
Oklahoma City, OK 73102
rand@lawokc.com

s/ Lisa Erickson Endres